UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

KINGVISION PAY-PER-VIEW LTD., as
Broadcast Licensee of the May 14,
2005 WRIGHT/TRINIDAD Program,

        Plaintiff,

CV 2006-3095 (CPS)(MDG)

    - against -

JESSICA'S RESTAURANT, INC. d/b/a
JESSICA'S RESTAURANT II,

        Defendant.

- - - - - - - - - - - - - - - - - X

Go, United States Magistrate Judge:

    Plaintiff Kingvision Pay-Per-View Ltd. ("plaintiff") brings

this action under Title 47 of the United States Code alleging

that defendant Jessica's Restaurant, Inc. d/b/a Jessica's

Restaurant II ("Jessica's" or "defendant") violated sections 553

and 605 by intercepting and displaying to its customers, without

plaintiff's authorization, a pay-per-view cable television

broadcast.[1]

    After entry of default following defendant's failure to

appear or otherwise defend in this action (ct. doc. 8),

plaintiff's motion for default judgment was referred to me for a

report and recommendation on damages and attorneys' fees.  See

_____

    [1] Plaintiff voluntarily dismissed all claims against
defendant Elsa Fernandez.  See ct. docs. 5, 6.

ct. doc. 9.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1); the November 29, 2006 affidavit of Donna Westrich, Vice-President of plaintiff ("Westrich Aff.") (ct. doc. 7-2); the August 8, 2006 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 7-3); the affidavit of investigator Cosmo Lubrano dated May 21, 2005 ("Piracy Aff.") (attached as Exhibit D to the Westrich Aff.) and two affidavits of Lubrano dated November 20, 2007 ("Lubrano Aff.") (ct. doc. 14), ("Amended Piracy Aff.") (ct. doc. 15). Defendant did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Deerfield Beach, Florida. Compl. at ¶ 5. Defendant Jessica's is a New York corporation with its principal place of business located at 112-01 Roosevelt Avenue, Corona, New York. Id. at ¶ 10.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the Wright/Trinidad boxing match, including all undercard bouts and the entire television broadcast scheduled for May 14, 2005 (the "program"). Id. at ¶ 15; Westrich Aff. at ¶ 3, Exh. A. Plaintiff entered into sub-license agreements with various entities to show the program to their patrons. Compl. at ¶¶ 16-17; Westrich Aff. at ¶

3, Exh. B.

Defendant did not contract with plaintiff, and thus, was not authorized to receive and publish the program. Westrich Aff. at ¶ 6. As set forth in his affidavits, investigator Lubrano observed the unauthorized public showing of the program at Jessica's Restaurant to 22 customers. Lubrano Aff. at ¶¶ 7-9; Piracy Aff. at 2; Amended Piracy Aff. at 2. Entering the establishment at approximately 9:30 p.m. on May 14, 2005, investigator Lubrano observed, <u>inter alia</u>, an undercard bout between Victor Burgos and William Grigsby.[2] Lubrano Aff. at ¶¶ 7-9; Piracy Aff. at 2; Amended Piracy Aff. at 2.

Plaintiff served the corporate defendant Jessica's with the Summons and Complaint on September 20, 2006 by personal delivery to the Secretary of State of New York. <u>See</u> ct doc. 4. I find that service was properly effectuated upon defendant. <u>See</u> Fed. R. Civ. P. 4(h)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).

Following defendant's failure to answer the Complaint,

---

[2] The piracy affidavit originally submitted by plaintiff in support of its motion for default judgment stated that Lubrano observed an undercard match between Burgos and "Janiola." <u>See</u> Piracy Aff. at 1. Having consulted the publicly available records of the Nevada Athletic Commission, I determined that there was no undercard fight involving a boxer named Janiola on May 14, 2005. In response to my Order to Show Cause dated November 13, 2007, plaintiff submitted affidavits from Lubrano stating that unbeknownst to him at the time, William Grigsby was substituted for Wyndel Janiola for the fight against Victor Burgos and confirming that he had viewed that undercard match at defendant's restaurant. <u>See</u> Amended Piracy Aff. at 1-2; Lubrano Aff. at ¶¶ 7-9.

plaintiff filed a motion for judgment by default on December 6, 2006. Ct. doc. 7.

DISCUSSION

I.  <u>Legal Standards Governing Default</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. <u>Greyhound</u>, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." <u>Id.</u>

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).

The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65; Directv, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II.  Determination of Damages

    A.  Liability

    Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming.  Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive . . . or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication . . . or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

    The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions.  See also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).  When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605

apply.  Id.

Plaintiff's submissions establish that defendant violated sections 553 and 605 of Title 47 by intercepting and receiving the program without authorization.  Compl. at ¶¶ 18-19; Amended Piracy Aff. at 1-2.  Plaintiff had the right to distribute the program, which originated via satellite uplink.  Compl. at ¶¶ 15-16; Westrich Aff. at ¶ 6.  Investigator Lubrano observed the program being displayed at Jessica's Restaurant, a business operated by defendant, even though defendant had not contracted with plaintiff to do so.  Amended Piracy Aff. at 1-2.  Consequently, this Court finds that defendant Jessica's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

B.    Damages

Plaintiff requests damages pursuant to section 605, rather than section 553.  Pl. Mem. at 5-7.  Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553.  See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages.  See 47

U.S.C. § 605(e)(3)(C)(i).  Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a).  That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just."  <u>See</u> <u>Home Box Office v. Champs of New Haven, Inc.</u>, 837 F. Supp. 480, 484 (D. Conn. 1993); <u>see also</u> <u>Joe Hand Promotions, Inc. v. Nekos</u>, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff").  In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  <u>See</u> <u>Cablevision Sys. New York City Corp. v. Faschitti</u>, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); <u>see</u> <u>also</u> <u>Sykes II</u>, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  <u>See</u> <u>Cablevision Sys. New York City Corp. v. Lokshin</u>, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover the maximum statutory damages allowed in the amount of $10,000 and enhanced damages up to

$100,000 for defendant's willful violation of section 605.  Pl.
Mem. at 5-7.  Some courts, when presented with sufficient
evidence indicating the number of patrons present at the time of
the unauthorized programming, have employed a formula that
multiplies that number by a dollar amount, usually based on the
customary charge for the event in question.  See, e.g., Mama Zee,
2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner
Cable of New York City v. Googies Luncheonette, Inc., 77 F.
Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of
New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111
(E.D.N.Y. 1997) (same).  Other courts have simply assessed a flat
damages amount per violation.  See Joe Hand Promotions, Inc. v.
Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159
(S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and
$1,500 enhanced damages for a one-time boxing match exhibit to
about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02
Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004)
(awarding $3,000 statutory damages and $5,000 enhanced damages
for a one-time boxing match exhibit to 60 customers); Kingvision
Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438
(S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time
boxing match exhibit to 30 customers).

Recently, a number of judges in this district have awarded
damages based on the number of patrons or the capacity of an
establishment multiplied by the residential fee for a pay-per-
view broadcast.  See, e.g., Kingvision Pay-Per-View Ltd. v.

<u>Cazares</u>, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damage award based on $54.95 residential rate for each patron present during broadcast of event); <u>Garden City Boxing Club, Inc. v. Rosado</u>, No. CV-05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); <u>Garden City Boxing Club, Inc. v. Bello</u>, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. <u>See</u> <u>Bello</u>, 2005 WL 2496062, at *3. Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95. <u>See</u> <u>Cazares</u>, 2006 WL 2086031, at *3; <u>Rosado</u>, 2005 WL 3018704, at *3; <u>Bello</u>, 2005 WL 2496062, at *3. Plaintiff has submitted evidence that 22 customers were present at Jessica's Restaurant when investigator Lubrano observed the program being illegally displayed. Amended Piracy Aff. at 1-2. I recommend that damages be awarded in the amount of $1,208.90 based on the number of customers observed in defendant's establishment multiplied by the $54.95 residential rate.

Further, I recommend that the Court award enhanced damages against Jessica's. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge

or charging premiums for food and drinks." <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in the Complaint and the supporting affidavits clearly establish that Jessica's Restaurant is a commercial establishment that publicly displayed the Wright/Trinadad program to customers without authorization. Compl. at ¶¶ 18-19; Amended Piracy Aff. at 1-2. Plaintiff's submissions support the inference that on May 14, 2005, Jessica's Restaurant displayed the program for commercial gain in order to attract customers or retain customers who would purchase defendant's products. Moreover, defendant was previously found liable by a court in this district for the willful infringement of two other boxing broadcasts. <u>See Joe Hand Promotions Inc. v. Jessica's Restaurant, Inc.</u>, CV 06-3091, ct. doc. 14 (E.D.N.Y. May 23, 2007). Thus, I find that defendant willfully acted to intercept the match without authorization and recommend enhanced damages equal to three times the amount of damages awarded under section 605(e)(3)(C)(i) for a total of $3,626.70. <u>See</u> <u>Kingvision Pay-Per-View, Ltd. v. Echeverria</u>, No. 06 CV 1266, 2007 WL 595025, at *4 (E.D.N.Y. Feb. 22, 2007); <u>Joe Hand Promotions, Inc. v. West</u>, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting <u>Googies Luncheonette</u>, 77 F. Supp. 2d at 490-91).

C.  Attorneys' Fees and Costs

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,224.00.  Lonstein Aff. at ¶ 3.  Title 47 U.S.C. § 605(e)(3)(B)(i) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party.  Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I").  The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Assoc., 493 F.3d 110, 117-18 (2d Cir. 2007); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate,

detailed and contemporaneous time records. <u>New York State Ass'n</u>
<u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d
Cir. 1983).

The reasonable hourly rates should be based on "rates
prevailing in the community for similar services of lawyers of
reasonably comparable skill, experience, and reputation." <u>Cruz</u>
<u>v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994)
(citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)).
Determination of the prevailing market rates may be based on
evidence presented or a judge's own knowledge of hourly rates
charged in the community. <u>Chambless</u>, 885 F.2d at 1059. The
"community" is generally considered the district where the
district court sits. <u>See</u> <u>Arbor Hill</u>, 493 F.3d at 118. The Court
in <u>Rotella</u> found that "the prevalent market rate in this district
is in the range of $200 to $250 for partners and between $100 and
$200 for junior and senior associates." <u>Rotella v. Bd. of Educ.</u>
<u>of City of New York</u>, No. 01 CIV. 0434, 2002 WL 59106, at *2-*3
(E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate
of lead counsel in a small firm of $225 per hour and rates of
$135 and $100 per hour for junior counsel were reasonable); <u>see</u>
<u>also</u> <u>SEC v. Goren</u>, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks to recover $774.00 in attorneys' fees.
Lonstein Aff. at ¶ 4. In support of that request, plaintiff has
submitted an affidavit from Julie Cohen Lonstein detailing the
work done, hours expended, and the total amount due. <u>Id.</u> Ms.
Lonstein states that attorney work totaled 3.12 hours at a rate

of $200 per hour, totaling $624, and 2 hours of paralegal time was expended at a rate of $75 per hour, totaling $150.00. <u>Id.</u> Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in this district. <u>See</u> <u>Rotella</u>, 2002 WL 59106, at *2-3; <u>see</u> <u>generally</u> <u>Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d at 491.

Given the insufficient information submitted to support the rate claimed, I recommend that plaintiff be awarded fees for its attorneys' time at a rate of $175 per hour and for its paralegals' time at a rate of $75 per hour, for a total fee award of $696.00.

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks $450 in costs. In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein, attesting to the payment of $350 for filing fees and $100 for service of process fees. Lonstein Aff. at ¶ 3, Exh. A. I find these costs reasonable and therefore recommend granting the request for $450.

CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff judgment against defendant Jessica's

Restaurant, Inc. in the amount of $1,208.90 in statutory damages, $3,626.70 in enhanced damages, $696.00 in attorneys' fees and $450 in costs, for a total judgment of $5,981.60.

This report and recommendation will be filed electronically and a copy sent by overnight delivery to the defendant on this date. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Charles P. Sifton and the other party, on or before December 20, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).


**SO ORDERED.**

Dated:      Brooklyn, New York
            December 3, 2007

                                    _____/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE